1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9     BENJAMIN ADAMS,

10              Petitioner,                    No. CIV S-05-2237 JAM JFM P

11         vs.

12    TERESA SCHWARTZ, Warden,

13              Respondent.                    <u>FINDINGS AND RECOMMENDATIONS</u>

14    _____/

15              Petitioner is a 69 year old state prisoner proceeding through counsel with an

16    application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner also suffers

17    myriad medical ailments: he is a brittle diabetic (DOJ001844)[1] and has hypertension, chronic

18    hepatitis C viral infection, bilateral lower extremity venous insufficiency secondary to an old

19    gunshot wound (DOJ001841), chronic low back pain and an allergy to sulfonamides.

20    (DOJ001873.)  On March 4, 2008, petitioner's counsel notified the court that petitioner had been

21    diagnosed with prostate cancer, but had not yet received treatment.  (Docket No. 40.)

22              Petitioner is serving a sentence of life with the possibility of parole, following his

23    1984 conviction on charges of kidnaping for robbery, robbery, and attempted robbery.  Petitioner

24    _____

25         [1] On May 28, 2008, respondent lodged the administrative record.  (Docket No. 54.)
      Citations are to the page numbers Bates stamped on the bottom right hand corner of each page.
26    (For example, "DOJ001844.")

                                              1

challenges the April 10, 2003 decision of the California Board of Parole Hearings (Board) to deny him a parole date.  Petitioner contends that he was deprived of a constitutionally protected liberty interest because there was no evidence to support the Board's decision to rescind the 2002 grant of parole and there is no evidence that petitioner's release will unreasonably endanger public safety.

On April 15, 1996, a superior court judge appointed counsel for petitioner, and, in granting the state petition for writ of habeas corpus, ordered the Board to set aside its December 21, 1995 unsuitability finding, stating:

> The record before this court reflects that Petitioner has done all that prior panels have asked him to do.  He has realistic goals upon release and a supportive family.  By ignoring all positive factors, the factual basis upon which to find Petitioner unsuitable for parole was skewed against his favor.  There simply is no evidence to support the [Board's] finding that Petitioner would pose an unreasonable risk of harm.  In finding Petitioner unsuitable for parole, the court finds that the [Board] abused its discretion.

(April 15, 1996 Order, appended to Petition as Ex. B at 42; DOJ001789-93.)(Judge Silver.) Despite Judge Silver's order, petitioner was denied parole at the subsequent parole consideration hearing.

Since the initial denial, despite Judge Silver's order, a classification score of zero, the absence of any prison disciplinary conviction after 1997,[2] multiple psychologist's conclusions that petitioner presents a low potential for violence, a stable and supportive family, an offer of employment in the family business, completion of a certified vocation in 1995, consistently good work reports, participation in Narcotics Anonymous and numerous religious activities, petitioner, a licensed minister and grandfather of two, who suffers multiple health issues, has been denied parole at nine subsequent parole consideration hearings from 1989 through 2003, since he was initially denied parole in 1988.

---

[2]  During his almost 24 years of incarceration, petitioner has had three disciplinary convictions, all of which were 115s received before 1997.  (Answer, Ex. 5 at 15.)

2

1      For the reasons set forth below, this court finds that the rescission of petitioner's

2  parole was not supported by even the minimal quantum of evidence required to satisfy the

3  requirements of the federal due process clause.  Moreover, the rescinding Board's 2003 decision

4  to rescind parole for another year, as well as their failure to parole petitioner over five years later,

5  makes manifest and inescapable the conclusion that no purpose will be served in remanding this

6  matter for another parole consideration hearing or setting a parole date.  It is therefore the

7  recommendation of this court that respondent be directed to release petitioner forthwith on

8  parole.

9                          PROCEDURAL BACKGROUND

10      In 1984, petitioner was found guilty after a jury trial of robbing two men and

11  attempting to rob a third on separate occasions.  As to one victim, petitioner was found guilty of

12  both robbery and kidnaping for purposes of robbery and sentences were imposed on both counts.

13  The trial court imposed two-year sentence enhancements under Penal Code §12022.1 because

14  petitioner committed the additional crimes while he was free on bail after his arrest for the first

15  robbery.  Petitioner appealed, and his case was remanded for re-sentencing on December 17,

16  1985.  On April 5, 1990, petitioner was sentenced to life with the possibility of parole for the

17  kidnaping for robbery, plus one year for the weapon enhancement, five years for one count of

18  robbery, and eight months for the attempted robbery.  (Answer, Ex. 1.)  The court stayed the

19  sentence on the other robbery count.  Petitioner was received in state prison on April 24, 1984.

20  (DOJ0000880.)

21      After appeal and re-sentencing, petitioner was sentenced to life with the

22  possibility of parole.  At the time of the commitment offenses, petitioner was forty-six years old,

23  and appeared to suffer a drug addiction.[3]  Petitioner was not convicted of inflicting bodily injury

24  /////

25  _____

26      [3]  A copy of the probation report is included in Exhibit 3 to the Answer.

on any of the victims.  Id.  Prior to this conviction, petitioner had no juvenile record, but he had an extensive criminal record.

On April 1, 1996, a hearing was held on petitioner's state habeas petition challenging the December 1995 denial of parole.  In re Application of Benjamin Adams, Case No. HC 2809 (April 16, 1996)(DOJ001789).  The state court noted that petitioner's prior petition had come before that court in November 1994.  Id.  The prior state court petition was denied on December 27, 1994.  Based on a minimum factual basis to support the Board's findings, the court found respondent had not abused its discretion in finding petitioner unsuitable for parole.  Id.  However, the state court indicated that "if petitioner was again found unsuitable for parole, the court would consider setting the matter for hearing."  Id.

Petitioner filed a Petition for Peremptory Writ of Mandate on December 29, 1995. The state court construed this filing as a petition for writ of habeas corpus and set the matter for hearing on April 1, 1996.  (Id., DOJ001790.)  As noted above, Judge Silver found the Board abused its discretion in denying petitioner parole in 1995 as "[t]here simply is no evidence to support the [Board's] finding that Petitioner would pose an unreasonable risk of harm."  (Id., DOJ001793.)  Judge Silver ordered respondent to set aside its December 21, 1995 decision finding petitioner unsuitable for parole and hold a new suitability hearing within thirty days.  (Id.)

Petitioner filed another petition for writ of habeas corpus in state court, but that petition was denied as unexhausted.  In re Application of Benjamin Adams, Case No. HC 3028 (September 22, 1997)(DOJ000685.)

On April 2, 2004, petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court challenging the 2003 rescission of parole.  (Answer, Ex. 7.)  The Superior Court upheld the rescission of parole, finding that the granting panel failed to adequately discuss the nature of the commitment offenses, merely incorporating by reference a statement of facts from prior transcripts, and did not consider all of petitioner's prior criminal

/////

1   convictions.  In re Benjamin Adams, Case No. BH002706, Los Angeles County Superior Court,

2   September 17, 2004 (Answer, Ex. 9).

3           On October 5, 2004, petitioner filed a petition with the California Supreme Court.

4   (Answer, Ex. 10.)  On August 15, 2007, that petition was denied with a citation to People v.

5   Duvall, 9 Cal.4th 464, 474 (1995).  (Answer, Ex. 9.)

6           Petitioner filed the instant action on January 6, 2005 in the Northern District of

7   California.  The case was transferred here on November 4, 2005.

8           Petitioner has served 14 years beyond his minimum eligible parole date of 1994,[4]

9   and was denied parole at nine subsequent parole consideration hearings before he was granted

10  parole at the 2002 Board hearing.

11                               ANALYSIS

12  I.  Standards for a Writ of Habeas Corpus

13          Federal habeas corpus relief is not available for any claim decided on the merits in

14  state court proceedings unless the state court's adjudication of the claim:

15          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
16          determined by the Supreme Court of the United States; or

17          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
18          State court proceeding.

19  28 U.S.C. § 2254(d).

20          Under section 2254(d)(1), a state court decision is "contrary to" clearly

21  established United States Supreme Court precedents if it applies a rule that contradicts the

22  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

23  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

24  /////

25  ────────────────

26          [4]  The date was calculated as May 11, 1994 (DOJ000709; DOJ000833) or November 8,
    1994 (DOJ000830).

1  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

2  (2000)).

3         Under the  "unreasonable application" clause of section 2254(d)(1), a federal

4  habeas court may grant the writ if the state court identifies the correct governing legal principle

5  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

6  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

7  simply because that court concludes in its independent judgment that the relevant state-court

8  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

9  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

10  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

11  question, is left with a 'firm conviction' that the state court was 'erroneous.'")  The court looks

12  to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza,

13  297 F.3d 911, 918 (9th Cir. 2002).

14  II.  Petitioner's Claims

15         Petitioner alleges his "federal rights to due process of law were violated by the

16  rescission of his parole which had been granted by the [Board] on a proper finding of suitability

17  for parole based upon substantial evidence."  (November 16, 2006 First Amended Petition.)

18       A.  "Some Evidence"

19         In the context of the rescission of parole, "[t]he process that is due before a

20  prisoner can be deprived of such an interest is a showing that there is 'some evidence' in the

21  record to support a later rescission of that date."  McQuillion, 306 F.3d at 898.

22         The last reasoned rejection of this claim is the decision of the Los Angeles County

23  Superior Court on petitioner's petition for writ of habeas corpus.  The state court rejected this

24  claim as follows:

25              Even after parole is granted, the Board is authorized to rescind
              the grant of parole for good cause after a rescission hearing.

26  /////

6

(*Caswell, supra,* at 1026.)[5]  "Cause" includes new information indicating parole should not occur or fundamental errors which resulted in the improvident grant of parole.  (*Caswell, supra,* at 1026; *see* Cal. Code Regs., tit. 15, § 2451.)  However, cause for rescission is not limited to those grounds enumerated in California Code of Regulations, title 15, section 2451, and can also be found where the granting panel has failed to adequately consider the gravity of the prisoner's convictions.  (*Caswell, supra*, at 1026-27.)  "When the granting panel misstated facts or explicitly declined to consider information germane to the gravity of the crimes, it can fairly be said that reasonable minds could differ on whether the panel gave adequate consideration to the severity of the crimes."  (*Id.* at 1029.)  In those cases, there is "some evidence" of the panel's failure to consider the gravity of Petitioner's offense, justifying rescission of the parole release date.  (*Id.*)  The rescission panel is required to articulate specific facts or cite express omissions of the granting panel, in rescinding a parole date.  (*Id.* at 1031.)

The rescission panel reviewed the granting panel's record with regard to the gravity of the life offense.  The record established that the granting panel, rather than read a description of the life crime into the record, merely incorporated by reference a statement of facts taken from prior transcripts.  (*See* April 10, 2003 Parole Hearing Transcript, at 13 and 18.)  The rescission panel characterized the discussion of the life crime as an "exchange" between the panel and Petitioner, rather than any official rendition of the events.  (*Id.* at 18.)  The granting panel's summary of the facts was limited to "it was three different events basically . . . Aldon Doolittle, who was 72, Sherman Elsberry, and Paul Singer. . . you used a firearm and you kidnapped and robbed some elderly victims."  (*Id.* at 13-15.)

The record with regard to the granting panel's review of Petitioner's criminal history, established that the granting panel "incorporated" Petitioner's adult arrest record, including his personal and social history, by way of an October 1995 Board report.  (*See* April 10, 2003 Parole Hearing Transcript, *supra*, at 41.)  Additionally, the granting panel discussed some of Petitioner's prior convictions, but not all.  (*Id.* at 42.)  The rescission panel found at least nine prior convictions that were not even mentioned during the April 2003 hearing.  (*Id.*)

/////

/////

---

[5]  In re Caswell, 92 Cal.App.4th 1017, 1026-27 (2001)(Board found good cause to rescind the grant of parole based on the gravity of the offense and the prisoner's minimization of his role in the offense.

1            The rescission panel's findings that good cause existed to
2    rescind    Petitioner's parole date are supported by "some
      evidence."    (*Caswell, supra*, 92 Cal.App.4th 1017, 1026-27.)
3            Accordingly, the petition is denied.

4 (In re Benjamin Adams, Case No. BH002706 (September 17, 2004 Los Angeles County Superior

5 Court)(Answer, Ex. 9.)

6        The Board is the executive agency authorized to grant parole and set release dates

7 for prisoners serving life sentences, and in certain circumstances it may rescind an unexecuted

8 grant of parole.  (Cal. Penal Code, §§ 3040, 3041.)  Section 3041 of the California Penal Code

9 provides prisoners sentenced in California to a state prison term that provides for the possibility

10 of parole with "a constitutionally protected liberty interest in the receipt of a parole release date, a

11 liberty interest that is protected by the procedural safeguards of the Due Process Clause.  Irons v.

12 Carey, 479 F.3d 658, 662 (9th Cir. 2007) (citing Sass v. California Board of Prison Terms, 461

13 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003);

14 McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir.2002); and Bd. of Pardons v. Allen, 482 U.S.

15 369, 377-78, 107 S.Ct. 2415 (1987) (quoting Greenholtz v. Inmates of Neb. Penal & Corr.

16 Complex, 442 U.S. 1, 12, 99 S.Ct. 2100 (1979)).)  California law requires that the Board

17 "determine whether a prisoner is presently too dangerous to be deemed suitable for parole based

18 on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show

19 suitability' set forth in Cal.Code. Regs., tit. 15 § 2402(c)-(d)."  Irons, 479 F.3d at 662-63.  The

20 Irons court described the regulations as follows:

21             [T]he circumstances tending to show that a prisoner is unsuitable
            include: (1) the commitment offense, where the offense was
22             committed in "an especially heinous, atrocious or cruel manner";
            (2) the prisoner's previous record of violence; (3)"a history of
23             unstable or tumultuous relationships with others"; (4) commission
            of "sadistic sexual offenses"; (5) "a lengthy history of severe
24             mental problems related to the offense"; and (6) "serious
            misconduct in prison or jail." Cal.Code. Regs., tit. 15 § 2402(c).
25             Circumstances tending to show that a prisoner is suitable for parole
            include:  (1) the prisoner has no juvenile record; (2) the prisoner
26             has experienced reasonably stable relationships with others; (3) the

1        prisoner has shown remorse; . . . (6) the prisoner lacks any significant history of violent crime; . . . (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; (9) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." Cal.Code. Regs., tit. 15 § 2402(d).

5    Id. at 663 n.4.

6        It has been clearly established by the United States Supreme Court "that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768 (1985)); see also Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457, 105 S.Ct. 2768." Id. at 662. The main concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal.4th 1061, 1080, 1084, 1085, 1086, 23 Cal.Rptr.3d 417 (Cal.), cert. denied, 126 S.Ct. 92 (2005)("the overriding statutory concern" is for public safety; purpose of the statutes is to "guarantee that the Board has fully addressed the public safety implications" of the release determination).

16        Rescission of a prisoner's parole does not violate due process so long as "some evidence" having "some indicia of reliability" "supports the decision." McQuillion, 306 F.3d at 904 (quoting Superintendent v. Hill, 472 U.S. 445, 456, 105 S.Ct. 2768 (1985))  Petitioner's "argument that the rescinding panel did not base its decision on any evidence raises questions of fact that requires examination of both the granting panel's and rescinding panel's decisions." Caswell v. Calderon, 363 F.3d 832, 839 (9th Cir. 2004) (citation omitted).[6]

---

[6] Rescission may be based on (1) the prisoner's disciplinary conduct; (2) his psychiatric deterioration; (3) "[f]undamental errors" during the hearing at which parole was granted; or (4) new information indicating parole should not occur. Cal. Code Regs., tit. 15, § 2451, subds. (a)-(d). Cause for rescission is not limited to § 2451; parole may be rescinded if the granting panel failed to adequately consider the gravity of the prisoner's convictions. In re Steven Caswell, 92 Cal.App.4th 1017, 112 Cal.Rptr.2d 462 (1st Cir. Cal. 2001). However, "a rescission may not be upheld merely because the Board has mouthed words that have been held to constitute "cause" for rescission. There must also be an adequate 'factual underpinning for the

1        The reasoning in <u>McQuillion v. Duncan</u>, 306 F.3d 895 (9th Cir. 2002) is on point

2 here.  Courts "must apply the federal due process standard announced by the Supreme Court in

3 <u>Hill</u>.  Courts must determine whether the rescission panel had "some evidence" to support its

4 finding of "good cause" to rescind [petitioner's] parole."  <u>McQuillion</u>, 306 F.3d at 906.  Thus,

5 the court will address each of the three "good cause" grounds set forth by the rescinding panel to

6 determine if there was "some evidence" supporting any of those grounds, as well as the state

7 court's order concerning those grounds.

8        1.  Failure of the Granting Panel to Adequately Consider Gravity of the Offenses

9        On April 10, 2003, the Board reviewed the 2002 decision and found good cause to

10 rescind the parole date based on the commitment offenses:

11        1.  <u>Gravity of commitment offenses</u>.  The gravity of the

12 commitment offense[s] was given insufficient weight by the granting panel, noting in addition, the prisoner clearly minimized

13 his role in these crimes.  The three (3) victims were kidnapped for robbery.  Two (2) victims were confronted by the prisoner wielding

14 a knife.  The granting panel incorporated by reference the statement of facts from the hearing of September 6, 2001, pages 6

15 through 20.  Here the victims' names were mentioned and the fact there were three different victims.  In referencing the September 6,

16 2001 transcript, the panel members mentioned that the prisoner used a firearm and kidnapped, robbed elderly victims.  The

17 prisoner responded "yes" to victims being elderly, however, stated later that there was no weapon involved.  He then contradicted this

18 when he stated, "Yes, I used a weapon."  The panel did not examine in detail the prisoner's continued minimization of the

19 three separate crimes or the contradictions in prisoner's statements. The granting panel did not go into the specifics of the crimes

20 sufficiently enough to consider the gravity of the commitment offense[s].  We find good cause.

21 (Answer, Ex. 2.)  The state court found the granting panel failed to read the facts of petitioner's

22 commitment offenses into the record.  (Answer, Ex. 9.)

23        The state court relied on the rescinding Board's view that the granting panel failed

24 to adequately consider the gravity of the commitment offenses.  However, there was sufficient

25  

26 Board's determination of cause.'"  <u>Id.</u>, 92 Cal.App.4th 1027, citation omitted.

1   information before the Board to demonstrate that the facts of the commitment offenses were

2   known to and considered by the Board.  Specifically, the 1995 Life Prisoner Evaluation Report,

3   incorporated by the granting panel, set forth the commitment offenses as follows:

> Offense summary: On May 22, 1983, at approximately 5:45 p.m.
> when [petitioner] approached Sherman Elsbury requesting help to
> start his vehicle, [petitioner] stated that his battery was dead.
> Sherman Elsbury agreed to help him.  As Sherman Elsbury gave
> [petitioner] a ride, [petitioner] told Sherman Elsbury that he had a
> .45 Caliber weapon in his pocket.  The victim gave him his wallet.
> The subject fled the vehicle.  Sherman Elsbury observed the subject
> entering a Lincoln Continental with Arizona plates.  He reported
> this to the police.  The police observed [petitioner] in the Lincoln
> Continental and took [petitioner] into custody.  The victim
> identified [petitioner] as the assailant.  On May 24, 1983, at
> approximately 11:15 a.m., Paul Singer was approached by
> [petitioner] who asked if he had jumpe[r] cables.  Paul Singer
> replied he did not have any and was forced into his vehicle at knife
> point.  The victim was forced to drive to North South Alley on 20th
> Street.  Subject took $280.00.  On May 28, 1983, at approximately
> 12:45 p.m., the same arresting officers observed [petitioner] on
> Pacific Avenue talking to an elderly gentleman.  The officers
> overheard [petitioner] asking Alden Doolittle for assistance in
> starting his car.  When the officers approached Doolittle and
> [petitioner], [petitioner] immediately indicated that he was working
> for Doolittle.  Mr. Doolittle immediately indicated that he never
> saw the subject before.

16   (Answer, Ex. 6.)  The state court faulted the granting panel for choosing to incorporate facts from

17   prior transcripts "rather than read a description of the life crime into the record" and failed to set

18   forth "any official rendition of the events."  However, neither the state court nor the rescinding

19   panel explained how the failure to read facts known to petitioner and the Commissioners into the

20   record demonstrate the granting Board failed to adequately consider the commitment offenses.

21   Both the state court and the rescinding Board noted that the granting panel discussed with

22   petitioner the fact that there were three separate offenses, with three separate, elderly victims, and

23   identified the victims by name.  Neither the state court nor the rescinding Board explained what

24   facts should have been included or how any of the omitted facts demonstrate the granting panel

25   failed to adequately consider the commitment offenses.  There is no evidence here that the

26   /////

1   granting panel "misstated facts or explicitly declined to consider information germane to the

2   gravity of the crimes." In re Caswell, 92 Cal.App.4th at 1029.

3          Rather, the granting panel's decision makes clear the panel was familiar with

4   petitioner's commitment offenses:

> The basic term of . . . confinement . . . would be the base life
> offense of which the prisoner has been convicted is kidnap for
> robbery, Penal Code Section 209(B).  The offense occurred on May
> the 24th of 1983.  The term is derived from the matrix located in
> the CC&R Title 15, and that would be 22 – Penal Code Section
> 2282(C), kidnap for robbery.  The Panel finds that Category AI . . .
> is the appropriate category in that there was minor movement of
> the victim, . . . minor injury or unharmed to the victim as well. . . .
> He received no injuries in his – your attack on him . . . in that
> particular case. . . .  So, the base assessment would be 144 months
> for the base offense noted.  This would be the aggravated term, and
> the aggravated because of the age of the victims, all of the victims
> were elderly men. . . .  And then for the adjustment for weapons, a
> deadly weapon, we gave you six months.

13  (Answer, Ex. 5 at 47-48.)

14         Although the state court did not address this issue, the rescinding panel made

15  much of petitioner's alleged contradiction concerning use of a weapon.  However, the alleged

16  contradiction concerning use of a weapon took place during the 2001 Board hearing.  The record

17  reflects that petitioner dispelled any contradiction in the 2002 hearing by admitting he used a

18  deadly weapon in the commission of the instant offenses.  Commissioner Moore asked petitioner

19  about his claim in the 2001 parole hearing that he did not have a weapon.  (Answer, Ex. 5, at 8.)

20  Petitioner declined to revisit that "controversy," but accepted responsibility for the crimes and

21  apologized.  (Id.)  Before Commissioner Moore referred to the 2001 hearing, petitioner

22  affirmatively answered the Commissioner's question, "you used a deadly weapon to kidnap and

23  rob the elderly victims and in an attempt to support your drug habit, heroin?"  (Id. at lines 5-9.)

24  /////

25  /////

26  /////

1   Petitioner also admitted he committed crimes against three different, elderly victims.  (Answer,

2   Ex. 5 at 8, lines 1-4; 9, lines 5-8.)[7]

3         The fact that the granting Board considered petitioner was not convicted of

4   inflicting bodily injury on any of the three victims and noted the "minor movement of the

5   [kidnapping] victim" (Answer, Ex. 5 at 48), demonstrates that the Board adequately considered

6   the gravity of petitioner's commitment offenses, even if the granting Board did not read the

7   details of petitioner's commitment offenses into the record.  The granting panel specifically

8   found that petitioner's commitment offenses were a result of significant stress based on his

9   addiction to heroin, which apparently mitigated the weight of petitioner's commitment offenses,

10  particularly given his long-term sobriety in prison.  These findings also demonstrate the granting

11  panel adequately considered the gravity of petitioner's commitment offenses.

12        The court presumes "that the panel considered all of this evidence that was

13  squarely before it."  McQuillion,  306 F.3d at 906.  Given the brief good cause statement on this

14  ground, as well as the state court's emphasis on a simple failure to read facts into the record, this

15  court finds that the rescinding panel's "good cause" finding on this issue was not supported by

16  "some evidence."  While it is apparent the rescinding panel disagreed with the granting panel's

17  /////

18

---

19      [7]  The rescinding Board also incorrectly recited the facts of the commitment offenses.
     The rescinding Board stated:  "Two (2) victims were confronted by the prisoner wielding a

20  knife."  (Answer, Ex. 2 at 3.)  However, the probation report reflects that during the first criminal
     act, on May 22, 1983, petitioner "indicated he had a .45 caliber weapon in his pocket."  (Answer,

21  Ex. 3 [docket no. 42-4&5.])  During the May 24, 1983 crime, petitioner forced the victim into the
     vehicle at knife point.  (Id.)  During the May 28, 1983 crime, a police officer intervened before

22  the crime could be completed and there is no mention of the use of a weapon at all.  (Id.)  On
     direct appeal, the state appellate court did not mention use of a knife as to the third charge.

23  People v. Adams, 175 Cal.App.3d at 855.  Although the prosecution included allegations
     petitioner used a dangerous and deadly weapon in all three counts, petitioner was convicted with

24  only one count of use of a knife (Count 6).  (Answer, Ex. 3.)  Petitioner was not convicted of use
     of a firearm.  (Id.)

25      These facts surrounding the three different incidents might explain petitioner's alleged
     contradiction during the 2001 hearing.  Perhaps petitioner should be credited for ultimately

26  acknowledging he used a weapon, "Yes, I used a weapon," rather than viewed as contradicting
     himself during the 2001 hearing.

1   decision, such disagreement does not mean that the granting panel failed to adequately consider

2   the evidence before it.

3          2.   Failure of the Granting Panel to Adequately Consider Prior Criminal History

4          On April 10, 2003, the Board also found good cause to rescind the parole date

5   based on petitioner's criminal history:

6          2.   Criminal history.  The prisoner's history was not sufficiently
           addressed by the granting panel.  They incorporated by reference
7          his criminal history and cited the 1995 Board Report as the source
           document.  That report does not reflect an accurate description of
8          the prisoner's criminal history.  Commissioner Moore had
           discussed the history at the September 6, 2001 hearing.  (Deputy
9          Commissioner Cassady was not at the 2001 hearing.)  However, he
           failed to mention at least eight convictions, did not address the
10         bench warrants or parole violations.  When there was discussion of
           criminal history, the prisoner minimized his record.  The granting
11         panel's omissions were sufficient to warrant a finding of good
           cause.

12

13   (Answer, Ex. 2.)  The state court found the granting panel incorporated petitioner's adult arrest

14   record, including personal and social history, and failed to discuss or mention at least nine prior

15   convictions.  (Answer, Ex. 9.)  The state court relied on the rescinding Board's view that the

16   granting panel failed to adequately consider petitioner's criminal history.

17          However, the record reflects that Commissioner Moore discussed petitioner's

18   criminal history at the 2001 Board hearing.  Although Commissioner Cassady was not at the

19   2001 hearing, Commissioner Moore stated at the beginning of the 2002 hearing that "[w]e've

20   reviewed [petitioner's] Central Files and [his] prior transcript."  (Answer, Ex. 5, at 3.)  Thus, the

21   granting panel had reviewed petitioner's criminal history recounted at the 2001 Board hearing.

22   In addition, petitioner's central file was replete with references to his lengthy criminal record.

23   For example, in 1988, one Board member referred to petitioner's sixteen page rap sheet and

24   convictions spanning a 22 year period.  (DOJ0000884.)  During the 1995 Board hearing, a Board

25   member stated petitioner had over forty arrests.  (DOJ000845.)   The fact that petitioner had a

26   lengthy criminal history prior to his commitment offenses was information readily accessible in

14

1   petitioner's central file to each Board member prior to the 2002 parole hearing.  In fact,

2   Commissioner Cassady noted petitioner's "extensive prior arrest record for drug related

3   offenses" (Answer, Ex. 5 at 23) while relating Dr. Collins' clinical assessment.  Commissioner

4   Cassady also referred to petitioner's "extensive arrest and conviction record which spanned three

5   decades," including grants of probation six times and grants of parole twice.  (Id. at 29.)

6            The 1995 Life Prisoner Evaluation Report also contained the most serious

7   convictions, including the 1965 conviction for misdemeanor assault with a deadly weapon, and

8   the narcotics possession and influence convictions for which petitioner was placed in drug

9   treatment, jail and prison (twice).  The omitted convictions were primarily possession or

10  influence of controlled substance convictions.  There was one conviction for petty theft (1968)

11  and one for shoplifting (1982).  None of the omitted convictions changed the picture presented by

12  the 1995 report – petitioner had a lengthy criminal history of crimes fairly typical of a person

13  addicted to illegal drugs, and he had previously served time in drug rehabilitation, jail and prison.

14  Neither the state court nor the rescinding Board explained how the failure of the Commissioners

15  to read a list of each conviction or arrest demonstrates the granting panel failed to adequately

16  consider petitioner's lengthy criminal history, particularly in light of all the evidence of his

17  criminal history set forth in the 2001 transcript, the 1995 Life Prisoner Report, and the central

18  file.

19            In addition, other than the 1983 commitment offenses, the only violent offense

20  was petitioner's June 10, 1965 arrest for assault with a deadly weapon and disturbing the peace;

21  he was convicted of these misdemeanor offenses on August 24, 1965, 38 years prior to the

22  rescinding Board's 2003 decision.[8]  The arrests and convictions during the interim eighteen year

23  period were primarily drug-related:  possession and/or use of narcotics and/or controlled

24  substances and theft to fund his drug addiction.

25

26     [8] Petitioner was sentenced to a $110.00 fine / 10 days in jail.  (Answer, Ex. 4, at 3.)

1          Similarly, in discussing petitioner's criminal history, the rescinding Board failed

2   to consider that most of petitioner's criminal history was due to a serious drug addiction.

3   This court finds that it was unreasonable for the rescinding Board to disregard the granting

4   panel's decision concerning petitioner's criminal history simply because the granting panel failed

5   to recite every conviction, bench warrant, parole violation and arrest, particularly given the length

6   of petitioner's criminal history as well as the length of time that had passed since petitioner last

7   committed a crime or sustained a prison disciplinary.  The commitment offenses occurred in

8   1983; petitioner's last serious prison disciplinary occurred in 1997.  None of petitioner's prison

9   disciplinaries involved violence and few of petitioner's prior convictions involved violence.

10         Neither the state court nor the rescinding panel pointed to misstated facts or

11  evidence demonstrating that the granting panel "explicitly declined to consider information

12  germane," In re Caswell, 92 Cal.App.4th at 1029, to petitioner's criminal history.  Petitioner's

13  lengthy criminal history was known to the granting panel and well-covered in the materials

14  provided to the granting Board prior to the 2002 hearing.  The court presumes "that the panel

15  considered all of this evidence that was squarely before it."  McQuillion,  306 F.3d at 906.

16  Thus, this court finds that the rescinding panel's "good cause" finding on this issue was not

17  supported by "some evidence."  Although the rescinding panel may have disagreed with the

18  granting panel's decision, that disagreement does not demonstrate the granting panel failed to

19  adequately consider the evidence before it.

20             3.  Petitioner Minimized His Crimes

21         The state court did not address the rescinding Board's finding that petitioner had

22  minimized his crimes.  Accordingly, the court reviews this claim de novo.

23         A review of the record reflects that petitioner has accepted responsibility for his

24  crimes, has not just become a Christian, but became a licensed minister, who preaches to other

25  prisoners.  In an addendum to the September 1996 psychiatric evaluation, petitioner "expressed

26  his regret for that [criminal] lifestyle and said that he has become a Christian now and wants to

1   devote his life to the service of others." (Bruce M. Bakeman, Ph.D., DOJ000956.) In 1993,

2   petitioner also expressed regret for his crimes. (DOJ000957.)

3          This was made clear at the 2002 hearing as well. Petitioner expressed remorse for

4   the crimes, stating he was sorry for what happened, and that he has tried to give back to the

5   community by ministering to young prisoners about the hazards of drug abuse and helping

6   handicapped and elderly prisoners. Petitioner even wrote a letter of apology to one of his

7   victims. The record does not reflect that petitioner minimizes his crime; rather, the record

8   demonstrates that petitioner understands his crimes were primarily drug-related and is committed

9   to an effort to help others avoid the same fate. Petitioner has remained disciplinary free since

10   1997, and has sustained no prison disciplinaries for violent behavior during his entire

11   incarceration, demonstrating petitioner's commitment both to a nonviolent lifestyle as well as to

12   his sobriety. Petitioner, as well as psychologists and other prison staff, recognizes that

13   petitioner's crimes were drug-related; such recognition does not mean that petitioner is

14   minimizing his criminal history or his commitment offenses. This court finds that the rescinding

15   Board's characterization that petitioner "minimized" his crime was not based on some evidence

16   in the record.

17          Moreover, a prisoner's refusal to admit participation in the crime on matters of

18   conflicting evidence does not necessarily constitute unsuitability for parole or mandate

19   rescission. Cal. Code Regs., tit. 15, § 2236. "A prisoner may refuse to discuss the facts of the

20   crime in which instance a decision shall be made based on the other information available and

21   the refusal shall not be held against the prisoner." Id. Respondent has failed to provide any legal

22   authority for the proposition that petitioner's alleged minimization of his involvement in the

23   commitment offenses is sufficient to warrant rescission, particularly where the record reflects

24   petitioner has accepted responsibility for the commitment offenses and demonstrated remorse.

25   /////

26   /////

1       4.  Conclusion

2          A review of the record fails to reveal any evidence in support of the rescinding

3   Board's conclusion that the grant of parole was improvidently granted for failure to consider the

4   gravity of the commitment offenses, petitioner's criminal history or the alleged minimization of

5   his crimes.  Rather, the record demonstrates that the granting panel gave great weight to the other

6   factors of suitability,[9] found petitioner presented no danger to the public safety, and minimized

7   the weight of petitioner's commitment offenses and criminal history based on his underlying

8   drug addiction.  The granting panel expressly stated petitioner's "commitment offense was a

9   result of significant stress based on his addiction to heroin."  Indeed, the record before this court

10  shows facts congruent with those described by Judge Silver in 1996, justifying petitioner's

11  release twelve years ago.

12         Accordingly, the state courts' rejection of this claim was contrary to controlling

13  principles of United States Supreme Court authority.  Petitioner is entitled to relief under 28

14  U.S.C. § 2254(d) because the rescission of parole was not supported by "some evidence" and the

15  state court's decision was an unreasonable application of federal law.  Petitioner's first claim for

16  relief should be granted.

17     B.  Present Danger

18         Petitioner also argues there is no evidence to demonstrate he remains an

19  unreasonable risk of danger to society or a threat to public safety based on the following:

20         •      Petitioner has no juvenile record, his adult criminality was linked to his

21                addiction to heroin, he has spent years in prison in recovery through

22  /////

23

24         [9]  For example, a classification score of zero, the absence of any prison disciplinary
    conviction after 1997, multiple psychologist's conclusions that petitioner presents a low potential
25  for violence, a stable and supportive family, an offer of employment in the family business,
    completion of a certified vocation in 1995, consistently good work reports, and participation in
26  Narcotics Anonymous and numerous religious activities.

18

1              Narcotics Anonymous and religious counseling, and

2              his only other crime of violence was an assault with

3              a deadly weapon in 1965.

4      •     Petitioner has a stable family history with strong family ties to his brothers

5           who have offered him shelter and employment in the family business.

6      •     Petitioner is deeply religious and is a licensed minister who plans to reach

7           out to those who might succumb to addiction and criminality.

8      •     Petitioner is 69, a brittle diabetic and remorseful for his actions.

9           Petitioner's last prison disciplinary was in 1997.

10 (Traverse at 2.)

11       Respondent denies the commitment offenses and petitioner's criminal history

12 have lost their predictive value and are no longer evidence of petitioner's current risk of danger

13 to society.  (Answer at 4.)  Respondent argues that the United States Supreme Court has

14 "endorsed the concept that '[p]revious instances of violent behavior are an important indicator of

15 future violent tendencies.'"  (Answer at 11, quoting Heller v. Doe by Doe, 509 U.S. 312, 323

16 (1993) [internal citations omitted].[10] [11]

17 /////

---

[10]  California courts have noted conflicting opinion in this regard:  "a large number of legal and scientific authorities believe that, even where the passage of time is not a factor and the assessment is made by an expert, predictions of future dangerousness are exceedingly unreliable. [Citations omitted.]  According to a Task Force of the American Psychiatric Association, "[n]either psychiatrists nor anyone else have demonstrated an ability to predict future violence or dangerousness. (Am.Psych.Assn., Task Force Report 8, *Clinical Aspect of the Violent Individual* (1974) at p. 28.) As our Supreme Court has also noted, 'the same studies which proved the inaccuracy of psychiatric predictions [of dangerousness] have demonstrated beyond dispute the no less disturbing manner in which such prophecies consistently err: they predict acts of violence which will not in fact take place ('false positives'), thus branding as 'dangerous' many persons who are in reality totally harmless. [Citation.]'"  [Citation omitted.]  In re George Scott, 133 Cal.App.4th 573, 595 n.9, 34 Cal.Rptr.3d 905 (1st Dist. 2005).

[11]  Heller is distinguishable because it was addressing the involuntary commitment of mentally retarded individuals who suffer from "a permanent, relatively static condition."  Heller, 409 U.S. at 323.  Unlike the individuals addressed in Heller, criminals can be rehabilitated.

1      The state court did not address whether petitioner posed a current risk of danger to

2  society; thus, the court will review the record de novo.

3      Under California law, parole may be denied if the Board "determines that the

4  gravity of the current convicted offense or offenses, or the timing and gravity of current or past

5  convicted offense or offenses, is such that consideration of the public safety requires a more

6  lengthy period of incarceration for [the] individual."  California Penal Code § 3041(b).

7  However,

> [a] prisoner's commitment offense may constitute a circumstance
> tending to show that a prisoner is presently too dangerous to be
> found suitable for parole, but the denial of parole may be
> predicated on a prisoner's commitment offense only where the
> Board can "point to factors beyond the minimum elements of the
> crime for which the inmate was committed" that demonstrate the
> inmate will, at the time of the suitability hearing, present a danger
> to society if released.  [In re] Dannenberg, 34 Cal.4th [1061] at
> 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005).  Factors
> beyond the minimum elements of the crime include, *inter alia*, that
> "[t]he offense was carried out in a dispassionate and calculated
> manner," that "[t]he offense was carried out in a manner which
> demonstrates an exceptionally callous disregard for human
> suffering," and that "[t]he motive for the crime is inexplicable or
> very trivial in relation to the offense." Cal.Code. Regs., tit. 15
> § 2402(c)(1)(B), (D)-(E).

Irons, 479 F.3d at 663.  "Regardless of the length of time served, a life prisoner shall be found

unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an

unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15

§ 2281(a).

      Recently, the California Supreme Court provided clarification of the "some

evidence" standard to be employed by state courts reviewing denial of parole decisions:

> because the paramount consideration for both the Board and the
> Governor under the governing statutes is whether the inmate
> currently poses a threat to public safety, and because the inmate's
> due process interest in parole mandates a meaningful review of a
> denial-of-parole decision, the proper articulation of the standard of
> review is whether there exists "some evidence" that an inmate

/////

1   poses a current threat to public safety, rather than merely some
    evidence of the existence of a statutory unsuitability factor.
2

3   In re Richard Shaputis, _____ Cal.Rptr. 3d _____, 2008 WL 3863608 at *7 (Cal.), citing In re

4   Lawrence, _____ Cal.4th _____, 2008 WL 3863606 at 2 (Cal.).

5          There is simply no evidence in this record to demonstrate that petitioner

6   "constitutes a current threat to public safety."  In re Lawrence, at *7; Irons, 479 F.3d at 663; see

7   also In re Rosenkrantz, 29 Cal.4th 616, 682-83, 128 Cal.Rptr.2d 104 (Cal.2002), cert. denied,

8   538 U.S. 980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient

9   basis for denying parole" but might violate due process "where no circumstances of the offense

10  reasonably could be considered more aggravated or violent than the minimum necessary to

11  sustain a conviction for that offense").

12          "[D]ue consideration" of the specified factors requires more than
            rote recitation of the relevant factors with no reasoning establishing
13          a rational nexus between those factors and the necessary basis for
            the ultimate decision-the determination of current dangerousness.
14          "It is well established that a policy of rejecting parole solely upon
            the basis of the type of offense, without individualized treatment
15          and due consideration, deprives an inmate of due process of law."

16  In re Lawrence, at *7, quoting Rosenkrantz, 29 Cal.4th at 684.

17          Here, although petitioner had an extensive criminal history, it was not particularly

18  violent.  Petitioner had one conviction for misdemeanor assault with a deadly weapon in 1965;

19  then, in 1983, was convicted of using a knife during a kidnaping for robbery.  Petitioner was not

20  convicted of inflicting bodily injury on the victim.  Indeed, petitioner was not convicted of

21  inflicting bodily injury on any of the victims in the commitment offenses.  As noted above,

22  petitioner's criminal history was primarily drug-related, and was not marred by the type of

23  violence often found in the histories of inmates serving life sentences.

24          Moreover, while prior violent behavior may be an important indicator of future

25  violent tendencies, the passage of time and efforts undertaken by the prisoner during that time,

26  reduces the predictive value of those early violent tendencies.  Petitioner had benefit of

1   rehabilitation by education, employment, Narcotic's Anonymous ("NA"), religious conversion

2   and good conduct for nineteen years before the Board rescinded his parole in 2003.

3            The psychologists' reports also demonstrate petitioner's low threat of danger to

4   public safety.  On June 11, 2002, Gary Collins, Ph.D., assessed petitioner's level of

5   dangerousness as follows:

6            His extensive prior arrest record for drug-related offenses implied
             that he would be a poor candidate for rehabilitation.  However, his
7            behavior within prison for several years and the content of his
             behavior when other reporters have spoken with him refute that
8            negative point of view.

9            Conditions for changes which have reduced this man's violence
             potential to a low level in the writer's opinion include:
10

11           A.  Age.

12           B.  Years of apparent abstinence from addicting drugs.

13           C.  The development of a positive philosophy organized around
                 religious concepts.
14
             D.  Better self-esteem through teaching of values imbedded in his
15               religious beliefs.

16           E.  No sign of psychiatric disorder.

17           F.  More capable functioning than psychological testing had
                 implied would be possible.
18
             G.  Family support and employment if paroled.
19   (DOJ001622.)

20           In the October 18, 1999 psychosocial evaluation, Dean J. Clair, Ph.D., noted

21   petitioner was not a "dangerous" person.[12]  Petitioner's classification score had been zero since at

22   least 1993, and

23           [a]t age 60 and with several potentially debilitating medical
             problems, this man would face living out his remaining days in
24

25       [12]  Dr. Clair acknowledged petitioner was found to be "manipulating staff" in 1996 and
     had received a number of 128 writeups based on "his being occasionally resistive and
26   cantankerous in his dealings with staff."  (DOJ000950; 1544.)

1           prison if he were responsible for even a minor felony.  His own
words were, "I'm never never going to return to prison!"

2

3  (DOJ000950; 1544.)  In the August 27, 1998 Psychological Evaluation, Robert Wagner, Ph.D.,

4  concluded petitioner's "potential for violence is very low and would most likely hold if paroled."

5  (DOJ000954; 1546.)

6          On April 3, 1997, Steven J. Terrini, Ph.D., performed a psychological evaluation

7  and concluded that "given [petitioner's] greater maturity, his Christian orientation (which

8  appears to be genuine) and his lack of CDC-115s, his violence potential is estimated to be below

9  average relative to this inmate population at this time."  (DOJ001124.)

10         In 1996, Bruce M. Bakeman, Ph.D., concluded petitioner "continues to be

11  emotionally stable, and if released, should present no danger to the general population."

12  (DOJ000956; DOJ000992.)

13         On June 17, 1993, Bruce M. Bakeman, Ph.D., performed a psychiatric evaluation,

14  and stated if petitioner were released, "he should be able to maintain these gains, provided he

15  avoids alcohol and illicit drugs."  (DOJ000958.)  "If he is considered for parole, his level of

16  dangerousness should be less than for the average inmate."  (Id.)  In the 1991 psychiatric

17  evaluation, Dr. S.J. Falkenstein, M.D., concluded that "[i]n a less controlled setting, such as

18  return to the community, [petitioner] is considered likely to continue improvement," and

19  "[v]iolence potential outside a controlled setting in the past is considered to have been less than

20  average and at present is estimated to be the same."  (DOJ000959; DOJ1783; DOJ000707.)  On

21  October 6, 1988, in petitioner's first psychological evaluation, V.L. McGaughran, Ph.D.

22  concluded that:

23           There is an indirect relationship between the diagnosed
psychopathology and the instant offense.  Previous violence

24           potential would have been rated as above average.  That potential
has been decreased and currently would be rated as average for this

25           population.  At this time there is no clinical indications for
psychotherapeutic programming.

26  (DOJ000961.)

1    The California Code of Regulations also calls for consideration of a prisoner's

2  behavior before, during and after the commitment offense as well as any treatment programs that

3  a prisoner has attended or continues to attend.  While petitioner's drug abuse prior to the offenses

4  and conduct during the offenses do not weigh in favor of parole suitability, his exemplary

5  conduct since his incarceration does.  Petitioner has not received a rules violation report since

6  1997.[13]

7    While the record is clear that there was a strong causal connection between

8  petitioner's use of heroin and his commitment offenses and criminal history, his past use of

9  heroin does not by itself reasonably establish current unsuitability because there is no additional

10  evidence to complete a chain of reasoning between his past drug use and a finding that because

11  of it he currently poses an unreasonable risk of danger if released.  In other words, in the absence

12  of some evidence to support a reasonable belief that petitioner might start using heroin again, the

13  fact that he was addicted to heroin more than 20 years ago does not by itself represent some

14  evidence that he is currently dangerous.

15    Moreover, here the record does not contain any evidence to support reasonable

16  grounds to believe petitioner might start using heroin if released.  There is no evidence that

17  petitioner's former desire for heroin might still be present.  The record reveals that he has been

18  clean and sober for a substantial period of time.  There is no evidence that he refused, failed, or

19  did poorly in NA.  And there is no evidence that petitioner ever used any type of illicit substance

20  or alcohol during his incarceration.  "[A]lthough the state expects prisoners to behave well in

21  prison, the absence of serious misconduct in prison and participation in institutional activities

22  that indicate an enhanced ability to function within the law upon release are factors that must be

23  /////

24

25    [13]  Petitioner has received three 115s during his entire incarceration, none of which were
   for violent behavior.  His last disciplinary conviction was in 1997 for intentional manipulation of
26  staff in an effort to negate his work assignment. (DOJ000390.)

considered on an individual basis by the Governor in determining parole suitability." <u>In re</u>
<u>Rosenkrantz</u>, 29 Cal.4th 616, 682, 128 Cal.Rptr.2d 104 (Cal. 2002).

Although an addiction to heroin may have been the root cause of petitioner's
commitment offenses and criminal history, that addiction alone does not constitute some
evidence that petitioner might start using drugs and become violent again, and therefore that he
currently poses an unreasonable risk of danger if paroled.  Indeed, if petitioner's past use of
heroin established this unsuitability, the Board could deny parole for the rest of petitioner's life
based on this unchanging factor, without regard to subsequent evidence that petitioner has no
current desire for heroin and that there is little current likelihood of drug relapse, let alone a
return to violent conduct as a result of it.  At the time of his commitment offenses, petitioner was
estranged from his family.  Petitioner now has the support of his family, with an offer of housing
and employment awaiting his release.

By the 2003 rescission hearing, petitioner had been denied parole at nine
subsequent parole consideration hearings before he was granted parole at the 2002 Board
hearing, after he had served nineteen years.  (He has now been in custody for twenty-four years.)
Petitioner's classification score has been zero since at least 1993.[14]

Unlike the petitioners in <u>Biggs</u>, <u>Sass</u> and <u>Irons</u>, petitioner has served 14 years
beyond his minimum eligible parole date of 1994.

The instant case is similar to <u>In re Lawrence</u> in that the commitment offenses and
criminal history were repeatedly relied on to deny parole notwithstanding petitioner's exemplary
behavior and evidence of rehabilitation since the commitment offenses.  Here, petitioner's age,
health, religious beliefs, stable family history and present relationships, lack of prison
disciplinaries since 1997, commitment to sobriety, and psychologists' reports demonstrate he no
longer poses an unreasonable risk to public safety.  In light of the extensive evidence of

---

[14]  Petitioner's classification score was 101 in 1985 (DOJ000352), 22 on February 2, 1988
(DOJ000351), and reduced to 4 on June 20, 1990 (DOJ000348).

1    petitioner's in-prison rehabilitation and exemplary behavior, the reliance on the unchanging facts

2    of the commitment offenses and criminal history to deny petitioner parole for the tenth time,

3    twenty-four years after the commitment offenses, violated his right to due process.  "The 'some

4    evidence' standard provides more protection than against fabricated charges or bureaucratic

5    mistakes; the 'some evidence' standard also protects against arbitrary decisions.  See Hill, 472

6    U.S. at 454-55, 457."  Tash v. Curry, 2008 WL 3984597 at *7 (N.D.Cal.).  The rescinding

7    panel's failure to determine whether petitioner's commitment offenses and criminal history

8    demonstrated petitioner posed a present danger to society constituted an unreasonable application

9    of Hill.  Id.  The petition should be granted.

10            In accordance with the above , IT IS HEREBY RECOMMENDED that:

11            1.  Petitioner's application for a writ of habeas corpus be granted; and

12            2.  Respondents be directed to release petitioner on parole forthwith.

13            These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

18   failure to file objections within the specified time may waive the right to appeal the District

19   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20   DATED:  September 11, 2008.

21

22                                          UNITED STATES MAGISTRATE JUDGE

23

24   001; adam2237.157

25

26